# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 17-571 |
| | : | |
| FAUSTINO PIMENTEL-SALGADO | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Faustino Pimentel-Salgado files this memorandum in aid of mitigation at sentencing. The Presentence Investigation Report prepared by United States Probation Officer Christopher L. Boyer concludes that the advisory guideline range is 4-10 months based on a total offense level 8, Criminal History Category II. Mr. Pimentel-Salgado was arrested by ICE agents in a "sweep" in Reading, Pennsylvania on September 27, 2017, when he was on his way to work. He was immediately taken into ICE custody and transferred to York, Pennsylvania for processing. Mr. Pimentel-Salgado admitted that he had previously been removed from the United States, that he illegally reentered the United States in January of 2017, in order to work, and that he did not have permission to return. On October 26, 2017, a grand jury in the Eastern District of Pennsylvania returned an indictment charging Mr. Pimentel-Salgado with one count of Illegal Reentry in violation of 8 U.S.C. § 1326(a). On November 28, 2017 Mr. Pimentel-Salgado appeared before The Honorable Joseph F. Leeson and entered a guilty plea to the indictment. Sentencing is scheduled for March 15, 2018.

Mr. Pimentel Salgado has been in continuous custody on these charges since his arrest on September 27, 2017. Given the particular facts and circumstances of this case, the defense

suggests that a sentence of time served would best fulfill sentencing goals pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and the subsequent cases reaffirming its holding, and 18 U.S.C. §3553(a).

I. **MR. PIMENTEL-SALGADO'S PERSONAL HISTORY**

Mr. Pimentel-Salgado's personal history is briefly summarized in the pre-sentence report. He had a life which is similar to most people who stand before this Court awaiting sentencing for this offense. He was born and raised in Michoacán, Mexico, one of twelve children born to Jose Guadalupe Garcia and Fidelina Salgado. He describes a loving and close knit relationship with his parents and siblings, though the family was very poor and struggled to maintain even the basic necessities. The tiny home did not have running water or electricity, which was only installed within the last few years. Food and clothing were often scarce and as both parents were farmers, the family survived off of crops that they cultivated. The defendant began helping on the farm as a young child and attended school only until the 5th grade, when he left school to begin working full time. When he was 14 years old, he moved with some of his siblings to the United States to find work to help support the family. While the defendant admittedly broke the law by returning illegally to the United States, he has never engaged in any other form of criminal activity; his return to the United States was motivated only by his desire to work to support his family in Mexico. He has always been able to find employment primarily in landscaping, agriculture or as a laborer, and at the time of his arrest was working for Risco in Reading, Pennsylvania. The defendant reports that when he was initially hired he was paid $11 per hour, but due to his skill and work ethic he was making $14 per hour at the time of his arrest. He was able to earn between $700 and $1000 per week because he "worked all the time."

In 2004, the defendant married Margarita Coronado Ledezma. Together they have three children who reside with Ms. Ledezma in Mexico. His son Andres, now almost 7 years old, suffers from serious medical issues which have required constant medical attention. The defendant has worked to pay for medical treatment and has also been forced to borrow money to pay his son's medical bills. Those from whom he borrowed began demanding their money back. He was under pressure to repay the debt, which motivated his return to this country to work. As noted in the Presentence Report, the defendant's sister-in-law confirmed the information provided by Mr. Pimentel-Salgado regarding his personal history. She describes him as a "kind, caring and loving man", who only returned to the United States because "his son has medical problems and he was working to pay the bills." He is a "good father and a good man", who is a "hard worker" and "very friendly and respectful."

 As previously mentioned, the defendant's wife and children reside in Mexico. His parents and nearly all siblings also reside there. He has always maintained a close relationship with his family. He has a strong support network on which to rely when he is returned. He has paid back nearly all the money that he borrowed for his son's medical care. His son is stronger and healthier, and does not require the same medical attention that he did when he was a young child, so the defendant's pressing need to make money is no longer an issue.

As is common among undocumented aliens, especially those from Mexico, his efforts to cross the border resulted in several contacts with Border Control Agents. Also common, is the multiple voluntary departures following these encounters. There is no question that this practice is employed due to the volume of people crossing the border without permission. By that same token, there can be no question that this practice does little, if anything, to discourage border crossings. Even when Border Control Agents increased their deterrence efforts by formally

deporting Mr. Pimentel-Salgado, the administrative process was nothing compared to the present criminal prosecution.

His motivation for re-entering was only to work to support his family. Even now, as he remains in custody, he is faced with the added stress of hearing how his incarceration is affecting his children's standard of living. This period of incarceration has affected the defendant and his family deeply. He has been in custody nearly six months and has had little contact with his loved ones.

As a result of this, he is firmly resolute to never return to this country. He realizes that he cannot return to this country without risking re-arrest and additional criminal penalties. Bearing in mind that he has never been in custody as long as he has been prior to now, this experience has impacted him deeply and has served the deterrent effect that his prior contacts with Border Patrol agents did not achieve. Additionally, he knows that the current political climate supports the implementation of harsher penalties for aliens with histories of prior convictions and deportations, such as him. This further reinforces the need for him to refrain from reentering the United States. He wants only to return to be with his family and to put his skills and strong work ethic to use in Mexico.

## III. APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

The Court must consider all of the factors identified in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. §3553(a)(1).

### A. The Nature and Circumstances of the Offense and History and Characteristics of Mr. Pimentel-Salgado

Mr. Pimentel-Salgado's work history and his motive for the commission of the instant

offense, all weigh in favor of a sentence of time served.

> **B.** **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**
>
> > *1.* *To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Pimentel-Salgado's period of incarceration is especially difficult given his inability to help his family. The guidelines generally account for harm, but not at all for the motive for committing the offense, which is highly relevant. Mr. Pimentel-Salgado understands that he should not have returned to the United States and is acutely aware of the potential for additional punishment in this and future cases. A sentence of time served would not promote a lack of respect for the law as Mr. Pimentel-Salgado is presently incarcerated and will remain in custody at a minimum until deportation.

As the Court is aware, deportations are not immediate and Mr. Pimentel-Salgado is likely to be incarcerated beyond whatever sentence this Court imposes. A time served sentence represents a within guideline range sentence. Sentences within the guideline range are relatively common for many similarly compelling reasons and do not undermine respect for the law.

> > *2.* *To afford adequate deterrence to criminal conduct.*

A sentence above time served is neither warranted nor necessary to further deter Mr. Pimentel-Salgado from returning. He understands what he would likely face if he returns in the future, which is unfathomable to him given his present guideline range. Mr. Pimentel-Salgado has been incarcerated since September 27, 2017. Mr. Pimentel-Salgado is very much aware of the significant period of incarceration he faces both and now and in the future should he to return again.

3. *To protect the public from further crimes of the defendant.*

Mr. Pimentel-Salgado poses no threat to the public. He has no record of any criminal activity except these immigration offenses. He will be returned to immigration custody for deportation upon completion of his sentence. Protection of the public is of diminished concern in this case.

    **C.    Kinds of Sentences Available**

The range of sentences statutorily available to the Court, including the advisory guidelines range, are listed in Part D of the PSR. Based upon a total offense level of 8 and a criminal history category of II, the guideline imprisonment range is four to ten months; since the range is in Zone B of the Sentencing Table, a sentence of imprisonment is not required, and the defendant is eligible for a probationary sentence. Further, the range includes a sentence of incarceration of up to two years, not more than 1 year of supervised release, and a fine of up to $250,000. Section 5D1.1(c) discourages the Court from imposing a period of supervised release. It reads as follows: The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.

**IV.    <u>CONCLUSION</u>**

Based on the above reasons, the defense respectfully requests the Court impose a sentence of time served.

                                          Respectfully submitted,

                                          */s/ Elizabeth L. Toplin*
                                          ELIZABETH L. TOPLIN
                                          Assistant Chief, Trial Unit

# CERTIFICATE OF SERVICE

I, Elizabeth L. Toplin, Assistant Chief, Trial Unit, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically served a copy of Defendant's Sentencing Memorandum *via* Electronic Case Filing and/or email, upon Nancy Beam Winter, Assistant United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106 and Christopher Boyer, Name, United States Probation Officer, William J. Green Federal Building, 600 Arch Street, Suite 2400, Philadelphia, Pennsylvania 19106

.

>  */s/ Elizabeth L. Toplin*
> ELIZABETH L. TOPLIN
> Assistant Chief, Trial Unit

Date: March 8, 2018